A92A1380, A92A1381. STALLINGS v. CUTTINO et al.;
and vice versa.
(422 SE2d 921)

POPE, Judge.

Plaintiffs, Benjamin Cuttino and his parents, Harold and Sally Cuttino, brought a negligence action against defendants, Scott Stallings and his parents, Robert and Shirley Stallings, for an eye injury Benjamin received while he and Scott were building a skateboard ramp at Scott's house. Defendants filed a motion for summary judgment, and plaintiffs moved to dismiss with prejudice their action against Shirley Stallings. The trial court granted summary judgment to defendant Robert Stallings but denied defendant Scott Stallings' motion for summary judgment. The trial court certified the denial of summary judgment for immediate review and this court granted Scott Stallings' application for interlocutory review. In Case No. A92A1380 Scott Stallings appeals from the denial of his motion for summary judgment. In Case No. A92A1381 plaintiffs cross-appeal from the grant of summary judgment to defendant Robert Stallings.

*Case No. A92A1380*

1. Defendant Scott Stallings argues he was entitled to summary judgment in this case based on the affirmative defenses of assumption of the risk/avoidance of consequences.

As pertinent to this issue, and viewing the evidence in favor of plaintiffs, the opponents to summary judgment, see, e.g., *Moore v. Svc. Merchandise Co.*, 200 Ga. App. 463, 464 (408 SE2d 480) (1991), the record shows that Scott and Ben, who were both 14 years old at the time of the accident, decided to construct a skateboard ramp in Scott's backyard. They used old lumber and nails which were at the Stallings' residence. The boys took turns holding the pieces of wood together while the other would attempt to hammer in the nails, and both gave deposition testimony that the nails would sometimes "fly away" or "fly up" instead of going through the wood. At the time of the accident, Ben was holding the wood and Scott was hammering. Ben testified that because of the problem with the flying nails, he ducked his head and closed his eyes while Scott was hammering. Ben further testified Scott paused during the hammering and he thought Scott had finished with that nail. When he started to raise up his head, Scott hit the nail again and it flew up, striking Ben in the eye.

"The defense of assumption of risk requires (1) that the plaintiff had some actual knowledge of the danger; (2) that [he] understood and appreciated the risk therefrom; and (3) that [he] voluntarily exposed [himself] to that risk. *Rainey v. City of East Point*, 173 Ga. App. 893 (328 SE2d 567) (1985)." *Cagle v. Thorpe*, 193 Ga. App. 576

(1) (388 SE2d 533) (1989). See also *Hollingsworth v. Hollingsworth*, 165 Ga. App. 319, 320 (301 SE2d 56) (1983). " 'In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone.' Prosser, Law of Torts (4th Ed.) p. 440. 'In by far the greater number of cases, the consent to assume the risk has not been a matter of express agreement, but has been found to be implied from the conduct of the plaintiff under the circumstances.' Prosser, supra, at 445; see Harper and James, Law of Torts, Vol. 2, Ch. XXI." *Osburn v. Pilgrim*, 246 Ga. 688, 695 (273 SE2d 118) (1980).

Ben Cuttino admitted in his deposition that he knew that using old wood and used nails was dangerous, but that he decided nevertheless to proceed with the project. Plaintiffs argue, however, assumption of the risk does not bar their claim of negligence because their primary allegation of negligence is that Scott was striking the nails with the hammer in a negligent manner. Specifically plaintiffs argue that Scott "negligently released the nail before driving it sufficiently deep into the wood to prevent it from flying, and then negligently struck the nail with a full blow." As to this allegation, Ben testified that he and Scott were striking the nail in the same manner (first tapping it lightly into the wood and then hitting it with a stronger blow so as to drive it completely into the wood), except that Scott was not tapping the nail as far into the wood as he was prior to hitting it with the harder blow. Ben opined that Scott "might have thought" the nail was in far enough prior to attempting to drive it in and that he did not say anything to Scott about the method he was using to hammer in the nails, and that he never suggested to Scott that he tap the nail in harder prior to attempting to drive it into the wood. Moreover, Ben admitted that a nail flew away while he was hammering (and presumably tapping the nail in harder) and that he never suggested to Scott to duck his head while he was hammering and Scott was holding the wood. Ben also testified that he never told Scott that he thought what they were doing was dangerous, although he himself thought it was "but not dangerous enough to stop."

" 'Although issues of negligence, lack of care in avoiding the negligence of others, lack of care for one's own safety, and assumption of the risk are ordinarily not susceptible to summary adjudication . . . where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion the issue of assumption of risk may be determined on summary judgment.' . . . [Cit.]" *Taylor v. Bloodworth*, 198 Ga. App. 186, 187 (400 SE2d 691) (1990).

However, plaintiffs urge that, even conceding the facts showing Ben may have assumed the risk of the activities engaged in, summary

judgment was properly denied in this case because Scott had the last clear chance to avoid the injury to Ben's eye. The last clear chance doctrine contains two elements, and the plaintiff must show each element as a matter of law in order to prevail. "The first essential element is that the plaintiff, by his own negligence, must have put himself in a position of peril from which he could not extricate himself (but the defendant presumably could have extricated him). . . . The second essential element of the doctrine of last clear chance is that the defendant must have knowledge and appreciation of the injured person's peril in time to avoid the injury." (Indention omitted.) *Shuman v. Mashburn*, 137 Ga. App. 231, 235-236 (3) (223 SE2d 268) (1976). See also *Smith v. Mobley*, 185 Ga. App. 462, 463 (2) (364 SE2d 597) (1987).

Pretermitting whether plaintiffs have made the proper showing as to the first element, our review of the record shows that plaintiffs cannot, as a matter of law, make the requisite showing as to the second element. Scott testified he never apprehended any danger in what they were doing, that neither he nor Ben remarked about the danger from the flying nails and that it did not occur to him that someone might get hurt because of the flying nails until after Ben was injured. He also testified that neither he nor Ben ever requested that the other take any precautions while they were working and that he did not remember if Ben ducked his head while he was hammering or what position Ben's head was in at the time of the injury. "The last clear chance doctrine simply has no application unless the defendant knew of the plaintiff's perilous situation and had opportunity to take proper evasive action to avoid injuring him. It does not apply to a 'should know' or 'should have known' situation. [Cits.]" *Conner v. Mangum*, 132 Ga. App. 100, 106 (6) (207 SE2d 604) (1974).

Based on the foregoing we conclude that " '[t]his is a "plain, palpable, and indisputable" case not calling for resolution by a jury.' *Favour v. Food Lion*, 193 Ga. App. 750, 751 (389 SE2d 22) (1989); *Smith v. Wal-Mart Stores*, 199 Ga. App. 808 (406 SE2d 234) (1991)." *Moore*, 200 Ga. App. at 464. The trial court thus erred in denying defendant Scott Stallings' motion for summary judgment.

### Case No. A92A1381

2. It follows from our holding in Division 1 that the trial court did not err in granting summary judgment to defendant Robert Stallings on the claims asserted against him based on theories of agency, negligent supervision and negligent entrustment.

*Judgment reversed in Case No. A92A1380. Judgment affirmed in Case No. A92A1381. Carley, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 25, 1992.

*Irwin, Bladen, Baker & Russell, R. Chris Irwin,* for appellant.
*J. Steven Parker,* for appellees.